James S. Watson, Defendant in Error, v. Francis C. Donald, Plaintiff in Error.

Gen. No. 13,925.

1. CONTRACTS—"*may*" *defined.* Held, that the word "may" as used in the contract involved in this case was not indicative of a conditional obligation but that the same, taken in connection with the other provisions of such contract, was to be construed as absolute in effect.

2. CONTRACTS—*when purchase price may be recovered back.* Money paid for stock in a corporation to be organized may be recovered back upon proof that it had become impossible for the party who received such money to organize such corporation and carry out his contract.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. ARNOLD HEAP, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed July 6, 1908.

BRODE B. DAVIS, for plaintiff in error.

BULKLEY, GRAY & MOORE, for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

This is a writ of error sued out to reverse a judgment entered August 24th, 1907, by the Municipal Court (sitting without a jury) for $512, in favor of the defendant in error, plaintiff below, James S. Watson, against Francis C. Donald, plaintiff in error and defendant below.

The suit was brought for money advanced by Watson to Donald—five hundred dollars—contemporaneously with the execution and delivery by Donald to Watson of the following instrument, which was introduced in evidence:

"CHICAGO, Feb. 7, 1906.

Upon the surrender of this receipt I do hereby contract and agree to deliver to James S. Watson or his assigns capital stock to the amount of Five Thousand ($5,000) at its par value, in any Company that may

be organized for the purpose of exploiting the Robertson Off Centre Automobile Wheel. It is further understood and agreed that said stock is to be as fully paid and non-assessable. The capital stock of the Company organized to be not less than Fifty Thousand Dollars ($50,000) not more than Two Hundred Thousand Dollars ($200,000).

Witness:            F. C. DONALD.

WM. J. McMULLEN.''

This instrument when produced in evidence was marked Exhibit A, and will be so spoken of in this opinion.

The evidence showed that at the time Exhibit A was executed and five hundred dollars paid over by Watson to Donald, Donald had in contemplation the formation of a company "to exploit" the Robertson Off Centre Automobile Wheel, but that no such company had been formed up to the time this suit was begun.

A document was introduced in evidence and marked Exhibit C, which was dated December 21, 1905, and was an agreement between the Off Centre Wheel Co., a South Dakota corporation, of the first part, and one C. H. Tucker and the defendant Donald of the second part. This agreement recites the ownership by the company of certain letters patent and provides that "the party of the first part grants to the party of the second part, through the medium of an incorporate company to be instituted in due course by the parties hereto, as hereinafter provided, the expenses thereof to be borne by said party of the second part, the sole and exclusive privilege and rights to introduce and commercially promote the device described and granted by said letters patent in so far as it may be applied to all kinds and description and types of self-propelled vehicles of whatsoever source of propelling power, commonly known as automobiles."

By the agreement also Tucker and Donald agree to assume the expense and supervision of such experimental work as may be necessary completely to demonstrate the practicability and commercial value of the

said patented device; and "In the event the party of
the second part shall find and decide as the result of
said tests and experiments, that the aforesaid patented
device may be profitably applied to the improvement
and betterment of self-propelled vehicles of whatsoever
source of propelling power, commonly known as auto-
mobiles, then an incorporate company as hereinbefore
provided shall be formed by the parties hereto, the cap-
ital stock of which shall not be less than Fifty Thou-
sand Dollars ($50,000), nor in excess of Two Hundred
Thousand Dollars ($200,000). The shares of said in-
corporate company shall be apportioned and owned
as follows: 45 per cent. to the party of the first part,
and 55 per cent. to the party of the second part."

It can be seen that the corporation contemplated by
the two agreements, Exhibits A and C, was the same.

Differences seem to have arisen between the parties
of the first part and the parties of the second part to
Exhibit C, respecting the division of the stock in the
proposed company, and under date of December 26,
1906, the Off Centre Wheel Company notified Tucker
and Donald that as they had failed to carry out the
agreement of December 21, 1905, the company can-
celled the agreement from said date of December 26,
1906, and "was at liberty to enter into contract with
other parties or manufacture and dispose of automo-
bile wheels as seems most advantageous to the com-
pany and for the best interests of their stockholders."

On March 5, 1907, Donald and Tucker sued the Off
Centre Wheel Company in the Superior Court of Cook
county for damages which they set at one hundred
thousand dollars, done to them by the cancellation of
the contract.

In or about August, 1906, Mr. Watson had become a
stockholder in the Off Centre Wheel Company, and in
January or Febrauary of 1907, he went to Mr. Donald
and demanded the five hundred dollars back on the
ground that the Off Centre Wheel Company had can-
celled their contract and that Donald therefore could

not organize the proposed corporation. The demand was not acceded to, and Watson began this suit in the Municipal Court for the amount on February 25, 1907. It resulted in the judgment before described.

The plaintiff relied below and relies here on the position that there was a contract of sale between him and Donald, by which Donald absolutely sold him and he absolutely purchased for the $500, paid stock to be delivered in the future; that it is no longer possible for the contract to be carried out by the defendant, because he has abandoned—voluntarily or involuntarily—the organization of such a corporation as is described; that such a corporation indeed could only be formed with the co-operation and under the contract, Exhibit C; that this contract is cancelled and repudiated by the Off Centre Company, and will not and cannot be carried out, and that Donald by beginning in conjunction with Tucker a suit for damages against the Off Centre Company has affirmed the cancellation; that in consequence he, the plaintiff, is entitled to recover back the $500 he paid Donald as money had and received for his use.

Upon the face of the matter at least this position seems well taken. Exhibit A, which was given for the $500 advanced, and plainly in consideration for it, does indeed say that the stock to be delivered is to be in any company that *"may"* be organized, etc., but it also says that it is agreed that the stock *is* to be fully paid and non-assessable and of an issue of not less than $50,000 nor of not more than $200,000. It is, except so far as the use of the word "may" can be said to effect it, direct and positive in its terms, making the agreement to deliver the stock conditional only on the delivery of the certificate. We think that the use of the word "may" does not turn the contract or agreement into a conditional one dependent on the organization of the company, nor give to the defendant an option whether or not he will organize or abandon the proposed corporation, and in consequence an option

whether or not he will deliver to the plaintiff any stock in any company. Therefore it would seem to be reasonable that when it became impossible, as the breach between the parties to Exhibit C and its results certainly made it, for the defendant to form a corporation which should effect the purposes of the proposed corporation, he should return the five hundred dollars advanced on the credit of Exhibit A. For it is to be noted that not only did the other parties to Exhibit C repudiate and annul the contract, but the defendant, by bringing suit for damages for it against them, accepted the action as an accomplished although unwarrantable act.

That the plaintiff had the right to recover and that the defendant was liable in this present action in the absence of some element not as yet noticed in this opinion, we think is not only consonant with reason but also with authority. The citations of the plaintiff in this connection are in point: Kempson v. Saunders, 4 Bingham's Rep. 5; Walstab v. Spottiswoode, 15 Neeson & Welsby's Rep. 500; Nockells v. Crosby, 3 Barnwell & Creswell 814; Benjamin on Sales, sec. 424.

But it is claimed by the defendant not only that this interpretation that we hold must *prima facie* be placed on Exhibit A, is incorrect, but that even if it would carry that meaning considered only by itself, it is subject to interpretation in the light of circumstances and conversations appearing in evidence in the record, and that these necessarily place upon it a conditional meaning.

The contention is that one McMullen, who brought to Donald the certified check of Watson for $500, and received Exhibit A in return, which document he brought with him already drafted for Donald's signature, did all this business as a means of procuring an interest in the enterprise for himself. He introduced the Off Centre Wheel Company and the patents involved in this matter to the notice of Mr. Donald, who was president of the Automobile Club, and he appar-

ently thought that this entitled him to "recognition," as he phrased it, which meant that he should be admitted to an interest in the contract between Donald, Tucker and the Off Centre Wheel Company. Then he was told that "if he wanted to come in and take pot-luck with Donald and Tucker he could come;" that "if it panned out, he was in, but if it didn't pan out, he was out and they were out." In response to this invitation or permission alone, he brought the $500, and received Exhibit A. Donald took the $500 under this understanding and arrangement with McMullen, and expended it with several thousand dollars of his own money in experimental work upon the device covered by the letters patent in question, and had not reached a point where the device had been demonstrated to be a commercial success, so as to warrant the forming of a corporation to put it on the market, when the Off Centre Wheel Company repudiated the contract nor when this present suit was begun. McMullen was cognizant of all this and of the clause in the contract with the Off Centre Wheel Co., Exhibit C, which provided that a corporation should be formed to promote the device only in case that such experimental work did result in establishing to Tucker and Donald's satisfaction that the device might be profitably applied to automobiles and thus be a commercial success—so that McMullen must, under the circumstances, be considered the agent of Watson, and Watson held to be in the shoes of McMullen so far as his rights, claims or liabilities in this lawsuit are concerned.

To fortify this argument it is pointed out that McMullen was a friend of Watson's of thirty years' standing and familiarly associated with him in office occupancy, and that Donald never knew Watson until after this money had been advanced and Exhibit A executed; also that when Donald saw the draft of Exhibit A, which McMullen handed to him, he said, "I thought you wanted this for yourself," to which

McMullen replied, "Watson is all right. It is the only way I can get anything out of it for myself."

It will be seen that this contention hinges on the assumed agency of McMullen for Watson. No part of all this evidence introduced to show the construction placed on the transaction when it took place is competent or material against Watson on any other theory. Whether then, even, it would not properly be excluded from consideration on the ground that the written instrument must be considered to have included all the terms of the contract, it is unnecessary for us to inquire; for we can see no evidence of agency on the part of McMullen or any evidence that he was held out as an agent by Watson. McMullen says, in effect, that it will be of advantage to him to have a contract of sale made to Watson, and then, although himself understanding that if let in to the undertaking he is to share the risk, brings from Watson, who is not known to defendant, a check, and demands for it a direct agreement of sale of stock running to Watson. If Watson, under these circumstances, repudiates the alleged agency of McMullen and says he did not understand that he was placing his money at the risk of the experimenting, it is for the defendant to prove that the contrary is true if he would put Watson into McMullen's shoes. There is nothing in the transaction itself which can place Watson there.

We do not think there was error in the trial or decison of this case by the Municipal Court, and we affirm the judgment.

*Affirmed.*